**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| LOUIS L.,[1]<br><br>    *Plaintiff,*<br><br>      v.<br><br>FRANK BISIGNANO,<br>Commissioner of Social Security[2]<br><br>    *Defendant.* | No. 22-cv-2485-MAU-DLF |

### REPORT AND RECOMMENDATION

Plaintiff Louis L. seeks Disability Insurance ("DI") Benefits under the Social Security Act. ECF No. 9 ("AR") at 15.[3]  He claims to have a traumatic brain injury ("TBI") with dizziness, vertigo, and sensory dysfunction; migraines; post-traumatic stress disorder ("PTSD") with anxiety and memory loss; occupational and social impairments; lumbosacral strain; and bilateral shoulder impingement syndrome.  *See* AR at 494.  The Social Security Administration ("SSA" or "Commissioner") denied Plaintiff's claim on July 5, 2022.  *Id.* at 1.  Plaintiff seeks reversal or, alternatively, remand for reconsideration under 42 U.S.C. § 405(g).  ECF No. 11 at 1.

Plaintiff argues that the Administrative Law Judge ("ALJ") made four errors in assessing Plaintiff's Residual Functional Capacity ("RFC").  Specifically, Plaintiff claims that the ALJ: (1)

---

[1]    The Court has partially redacted Plaintiff's name in accordance with the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.  *See* Memorandum from Hon. Wm. Terrell Hodges, Chair, Comm. on Ct. Admin. & Case Mgmt. to Chief Judges of the U.S. Cts. of Appeals, Chief Judges of the U.S. Cts., Clerks of the U.S. Cts. of Appeals, and Clerks of the U.S. Dist. Cts. (May 1, 2018), *available at* https://www.uscourts.gov/sites/default/files/18-ap-c-suggestion_cacm_0.pdf (last visited May 22, 2026).

[2]    The current Defendant has been substituted for his predecessor.  *See* Fed. R. Civ. P. 25(d).

[3]    Citations are to the page numbers in the ECF headers.

improperly evaluated Plaintiff's migraines; (2) improperly relied on a medical source opinion; (3) failed to adequately account for Plaintiff's limitations in concentration, persistence, and pace ("CPP"); and (4) improperly relied on medical evidence to discount Plaintiff's subjective symptoms. *Id.* at 6–19. The Commissioner contests each argument and seeks affirmance. ECF No. 12. The Court recommends that Plaintiff's Motion be **GRANTED** and the Commissioner's Motion be **DENIED**.

**BACKGROUND**

### I.    The Social Security Act

Congress enacted the Social Security Act in part to support disabled individuals who are unable to work. *See Helvering v. Davis*, 301 U.S. 619, 640–45 (1937) (outlining the Act's general purposes); *Flemming v. Nestor*, 363 U.S. 603, 608 (1960). Under the Act, a claimant must establish they are "under a disability" to qualify for DI or Social Security Income ("SSI") benefits. *See* 42 U.S.C. §§ 423(a)(1)(E), 1382c(a)(3)(B). The Act defines disability as the "inability to engage in substantial gainful activity" because of a physical or mental impairment which will foreseeably end in death or last for at least 12 consecutive months. *See* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Accordingly, a person is disabled under the Act when their impairment is so severe that they cannot do their previous work or other jobs in the national economy. *Id.* §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner uses a five-step test to evaluate whether a person is disabled. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). First, the ALJ must determine whether the claimant is currently engaged in "substantial gainful activity." *Id.* §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). Second, the ALJ considers whether the claimant has at least one severe "medically determinable" impairment. *See id.* §§ 404.1520(a)(4)(ii), 404.1520(c), 416.920(a)(4)(ii), 416.920(c); *see also id.* §§ 404.1509, 416.909. A severe impairment "significantly limits" a claimant's physical or mental

abilities to perform basic work functions. *Id.* §§ 404.1520(c), 416.920(c). Third, the ALJ determines whether the claimant's impairment(s) are among those disabilities in a regulatory listing that conclusively establishes disability. *Id.* §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). These "Listings" are physical and mental conditions that are presumptively severe enough to preclude gainful employment. *See id.* §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d); *see also* 20 C.F.R. Pt. 404, Subpt. P, App. 1. If a claimant satisfies step three, they are disabled under the Act and eligible for benefits. *Butler v. Barnhart*, 353 F.3d 992, 997 (D.C. Cir. 2004).

Fourth, if a claimant has not yet established a disability, the ALJ assesses the claimant's RFC and whether the claimant can perform their past work. *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f). At step five, the ALJ considers whether the claimant can perform other jobs that exist in significant numbers in the national economy considering the claimant's age, education, work experience, and RFC. *See* §§ 404.1520(a)(4)(v), 404.1520(g), 416.920(a)(4)(v), 416.920(g). The RFC is the most the claimant can work on a regular and continuing basis despite their limitations. *See* Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *2 (July 2, 1996) (noting the RFC is based on a work schedule of eight hours a day, five days a week, or the equivalent thereof). The ALJ considers all the claimant's mental or physical impairments, including any related symptoms. *Id.* The ALJ may ask a vocational expert to testify about whether the claimant can perform other work due to their RFC. *See* 20 C.F.R. §§ 404.1566(e), 416.966(e).

The claimant carries the burden of proof for the first four steps. *Butler*, 353 F.3d at 997. At step five, the burden shifts to the Commissioner to demonstrate the claimant can perform other work. *Id.*

## II.     Plaintiff's Disability Claims and Procedural History

At the time of the administrative hearing, Plaintiff was forty-two years old and held a bachelor's degree.  AR at 384, 650.  Plaintiff is a United States Army veteran who worked in satellite and radio communications in the military and as a civilian.  *Id.* at 353–57.  On October 7, 2020, Plaintiff applied for DI benefits after he became unable to work on September 15, 2020.  *Id.* at 15, 469, 494.  The SSA initially denied Plaintiff's claim on May 19, 2021, and again after reconsideration on August 26, 2021.  *Id.* at 403, 407–13.  Plaintiff requested an administrative hearing, which the ALJ held on April 1, 2022.  *Id.* at 347, 415.

## III.    The Administrative Hearing

The ALJ heard testimony from Plaintiff and a vocational expert.  *Id.* at 352, 376.

### A.  Plaintiff's Testimony

*Work History*.  Plaintiff served in the Army, trained as a satellite and radio communications technician and rifleman, and retired on April 30, 2020.  *Id.* at 353.  During his time in the military, Plaintiff had traumatic experiences, including witnessing injuries and/or death, losing consciousness multiple times, and suffering injury from jumping out of airplanes.  *Id.* at 361.  In one instance, Plaintiff lost consciousness in combat after a mortar round exploded above his head. *Id.*  From January to September 2020,[4] Plaintiff worked for Ridgeline International as a communications project and program manager.  *Id.* at 354.  Plaintiff and Ridgeline mutually terminated his position after Ridgeline could not provide enough work for Plaintiff, and Plaintiff failed to meet deadlines.  *Id.* at 355–56, 494.  Plaintiff has been unemployed since leaving Ridgeline on September 15, 2020, but collects a pension and benefits from the Department of Veterans Affairs.  *Id.* at 352, 355–56.

---

[4]     Plaintiff was on leave from the military from January to April 2020.  *Id.* at 354.

*Plaintiff's Physical Impairments*.  Plaintiff testified about his migraines and nerve damage. Plaintiff's migraines began in 2007 or 2008 and have increased in frequency and severity.  *Id.* at 361–62.  The migraines last for about three to four hours, during which he vomits and experiences nausea, but his symptoms linger for approximately one to one and a half hours after the migraine ends.  *Id.* at 362–63.  Plaintiff usually takes his medication and remains in a dark closet during his migraines.  *Id.*  Plaintiff explained that nerve damage causes him daily lower back pain that radiates down his leg.  *Id*. at 370.  He also experiences numbness in his arms and hands on a daily basis. *Id.* at 369–70.  Plaintiff reported that he could lift only fifteen or fewer pounds because of his back pain.  *Id.* at 357.

Plaintiff receives Botox injections every ninety days for his migraines.  *Id.* at 362.  These injections have reduced the frequency of his migraines to two or three times per week.  *Id.*  When the injections wear off, however, his migraines increase in frequency to four or five per week.  *Id.* Plaintiff takes Maxalt, magnesium oxide, and Gabapentin to treat his migraines but testified that the medication does not lessen the effects of the migraines.  *Id.* at 363–64.  For his nerve damage, Plaintiff testified that he took Naproxen for his back and leg pain and does an hour of movement each morning to regain mobility.  *Id.* at 370–71.  Plaintiff mentioned, however, that the nausea from his anxiety and migraines complicates his medication regimen.  *Id.*  Plaintiff also noted that he was seeking treatment for numbness in his arms and hands from the Department of Veterans Affairs pain management clinic.  *Id.* at 369.

*Plaintiff's Mental Impairments*.  Plaintiff testified about his PTSD and TBI.  *Id.* at 359. Plaintiff stated that he has daily combat PTSD flashbacks, which last about two to two and a half hours and cause him to sweat and experience nausea.  *Id.* at 364–65.  He also suffers from depression, which causes symptoms similar to PTSD.  *Id.* at 365–66.  For example, Plaintiff

testified that was unable to create social relationships because of PTSD and depression. *Id.* Plaintiff also testified that his TBI affects his concentration and memory. *Id.* at 366–67. Plaintiff has short-term memory loss and attention-deficit/hyperactivity disorder ("ADHD"), which, according to his doctors, worsens his PTSD and anxiety. *Id.* Plaintiff can take Gabapentin during the day for his anxiety, but the medication makes him drowsy. *Id.* at 364–368.

*Other Impairments*. Plaintiff testified about related impairments. First, Plaintiff testified about a "constant ringing" in his ears. *Id.* at 370. Second, he testified about his lack of sleep in connection with his TBI and PTSD. *Id.* at 365. Third, Plaintiff claimed that he struggles to control angry outbursts. *Id.* at 367. Plaintiff's counsel also noted that the Department of Veterans Affairs rated Plaintiff 70% disabled for his TBI and PTSD, 50% disabled for his migraine headaches, 20% disabled for his arm limitations, and 10% disabled for his impaired hearing as well as his various hand, neck, thigh, knee, ankle, and back limitations. *Id.* at 359.

*Plaintiff's Activities*. Plaintiff lives by himself on a military base but shares custody of his two minor children every other week. *Id.* at 357, 371. Plaintiff's children assist him with chores, but Plaintiff also independently shops, cooks, cleans, and does laundry. *Id.* at 357. Plaintiff spreads these daily tasks out to "offset [his] anxiety and migraines." *Id.* at 358. Plaintiff testified that, on an average day, his migraines and/or anxiety attacks cause him to lose function for approximately three to four hours, and sometimes up to seven hours. *Id.* at 374–75. These conditions prevent Plaintiff from leaving base more than two to three times per month and his home more than twelve to sixteen days per month. *Id.* at 371, 374. Plaintiff does engage in other activities, including occasionally golfing, walking, attending church, and driving. *Id.* at 358, 371–73.

### B.  Vocational Expert's Testimony

The ALJ also took testimony from vocational expert Donna Nealon.  *Id.* at 376–380.  The ALJ asked Nealon a series of questions about a hypothetical individual matching Plaintiff's age, education, and professional history:

> [A]ssume that this individual can lift, carry, push and pull 20 pounds occasionally, 10 pounds frequently, can sit for six hours in an eight-hour work day, stand and walk for six hours.  This individual can frequently climb ramps and stairs, ropes, ladders, scaffolds, balance, stoop, kneel, crouch, crawl[] frequent[ly].
>
> This individual can only occasionally be exposed to moving mechanical parts and unprotected heights.  This individual must work in a moderately loud work environment or quieter, with stable lighting no brighter than that of an average office setting.  This individual is limited to simple, routine tasks, but not at a production rate pace, can only occasionally interact with supervisors, coworkers and the public, and lastly, can only occasionally adjust to changes in workplace settings, no other limitations.

*Id.* at 377–78.

Nealon confirmed that the hypothetical individual could not perform Plaintiff's past work. *Id.* at 378.  Nealon testified, however, that the hypothetical individual could perform three light-exertion jobs: housekeeper cleaner, photocopying machine operator, and marker.  *Id.*  Nealon noted these jobs sometimes require production quotas and typically give a one to one-and-a-half hour lunch break and one to two 10-to-15 minute breaks.  *Id.*  Nealon testified that this these jobs would tolerate an individual being off task 10 to 15% of the time and, on a rare occasion, 20%.  *Id.* at 379.  Nealon confirmed that an individual who could not follow one-step instructions would be unable to perform these jobs.  *Id.* at 380.  She also confirmed that this hypothetical individual could not have three or more absences per month.  *Id.*

### IV.    The ALJ's Decision

The ALJ found that Plaintiff was not disabled based on the five-step analysis.  *Id*. at 17–28.  First, the ALJ found that Plaintiff had not engaged in substantial gainful activity since

September 15, 2020. *Id.* at 17. Second, the ALJ found that Plaintiff had seven severe impairments, including: (1) migraines; (2) ADHD; (3) anxiety; (4) trauma-related disorders; (5) spine disorders; (6) TBI; and (7) obstructive sleep apnea ("OSA"). *Id.* Third, the ALJ found that Plaintiff's impairments did not meet those in the Listings but concluded that Plaintiff had moderate limitations in CPP. *Id.* at 18–20.

At step four, the ALJ formulated Plaintiff's RFC. *Id.* at 20–21. Although the ALJ concluded that Plaintiff's medically-determinable impairments could reasonably be expected to cause his alleged symptoms, the ALJ found that evidence in the record contradicted Plaintiff's statements about the intensity, persistence, and limiting effects of those symptoms. *Id.* at 21–26. In discussing these contradictions, the ALJ relied on the medical opinions of Drs. Samantha Choudhury, Maia Coleman King, Mohamed Lobna, Eduardo Haim, Lisa Venkataraman, Patricia Cott, and Nancy Heiser. *Id.* at 21–26.[5]

### A. Medical Evidence of Plaintiff's Impairments

The ALJ found Plaintiff's migraines, PTSD, and TBI were stable. *Id.* at 22. The ALJ cited a November 4, 2020, letter from Dr. Choudhury in which she cleared Plaintiff to participate as a Junior Reserve Officers' Training Corps ("JROTC") instructor. *Id.* The ALJ further cited medical records which reflected that Plaintiff's Botox injections reduced his migraines from 16 days per month to five to eight days per month, and, by June 2021, to four days per month. *Id.* at 22–23. Finally, in analyzing Plaintiff's OSA, the ALJ concluded that Plaintiff's medical records reflected that he received enough sleep to function throughout the day with caffeine. *Id.* at 23.

The ALJ also found that medical evidence did not corroborate Plaintiff's alleged spinal disorders. *Id.* at 23, 25. First, an October 2020 x-ray and imaging of Plaintiff's spine showed no

---

[5]   The ALJ makes one reference to a "Dr. Wang" in the decision. *Id.* at 26. The Administrative record does not otherwise mention Dr. Wang.

acute fractures or malalignment. *Id.* at 23. Next, a February 2021 physical exam showed Plaintiff's spine exhibited normal motion ranges. *Id.* The ALJ noted that Plaintiff did not use an assistive device and scored a "5/5" on various strength tests. *Id.* Finally, in March 2021, Plaintiff reported to his doctors that he exercised approximately 30 to 60 minutes daily. *Id.* Notes from November 2021 indicated that Plaintiff ran daily, golfed multiple times a week, and even went on a run with a 40-pound backpack in September 2021. *Id.*

Moreover, the ALJ found the medical evidence did not corroborate Plaintiff's alleged mental impairments. *Id.* at 22–26. First, Dr. Choudhury's October 2020 report stated that Plaintiff experienced increased symptoms of depressed mood and anxiety and was being treated for PTSD and ADHD. *Id.* at 23. Second, Dr. King's May 2021 psychiatric evaluation stated that Plaintiff self-reported sleep irritability and concentration issues and could not recall any items after five minutes. *Id.* But Dr. King also described Plaintiff as having socially adequate behavior, clear and expressive speech, and a coherent thought process. *Id.* at 23–24. Dr. King also stated that Plaintiff was able to complete memory exercises involving numbers, items, and current events. *Id.* Third, in May 2021, Dr. Lobna recorded Plaintiff as psychiatrically stable after Plaintiff reported he had good energy, an appetite, and stable physical exercise and social routines. *Id.* at 24. Finally, the ALJ found that Plaintiff's psychiatric exams were largely normal for the rest of that year. *Id.*

### B. Weight of Medical Opinions

With respect to Plaintiff's mental health impairments, the ALJ found Dr. King's 2021 conclusion unpersuasive. *Id.* at 25. The ALJ determined Dr. King's report concluding that Plaintiff had marked limitations on social interaction and the ability to regulate his emotions was inconsistent with Plaintiff's generally normal mental status examinations from Dr. Lobna throughout 2021. *Id.* Next, the ALJ found the opinions of Drs. Heiser and Cott persuasive because

9

their conclusions were supported by Plaintiff's intact attention, concentration, ability to perform calculations, and largely normal mental health examinations in 2021. *Id.* at 26.

With respect to Plaintiff's physical impairments, the ALJ found Dr. Choudhury's assessment persuasive because Plaintiff's impairments were stable enough to work as a JRTOC. *Id.* at 25. In addition, the ALJ found the reports from Drs. Haim and Venkataraman persuasive because those reports stated Plaintiff could lift 20 pounds occasionally and ten pounds frequently, which was consistent with Plaintiff's early 2021 physical examinations. *Id.* at 25–26. Based on these findings, the ALJ determined that Plaintiff could not perform any of his past relevant work but had the RFC to perform light work with the following limitations:

> [Plaintiff] can sit for six hours in an eight hour workday; stand and walk for six hours in an eight hour workday; frequently climb ramps and stairs; frequently climb ropes, ladders, or scaffolds; frequently balance, stoop, kneel, crouch and crawl. He can only occasionally be exposed to moving mechanical parts and unprotected heights. He must work in a moderately loud work environment or quieter with stable lighting no brighter than that of an average office setting. He is limited to simple, routine tasks, but not at a production rate pace. He can only occasionally interact with supervisors, coworkers and the public. He can only occasionally adjust to changes in workplace settings.

*Id.* at 20–21, 26–27.

Although the ALJ concluded that the medical record did not corroborate the severity of Plaintiff's ADHD, anxiety, and trauma-related disorders, the ALJ noted that Plaintiff's ongoing treatment resulted in some limitations. *Id.* at 24. Because of Plaintiff's ADHD, anxiety, and trauma, the ALJ limited Plaintiff to simple, routine tasks, but not at a production rate pace;[6] limited Plaintiff to interacting with supervisors, coworkers and the public occasionally; and limited Plaintiff to only occasional changes in the work setting. *Id.*

---

[6]    The ALJ noted this limitation "correspond[s] to the claimant's moderate limitations in the concentrating, persisting, or maintaining pace and understanding, remembering and applying information B criteria." *Id.* at 24.

At step five, the ALJ considered Plaintiff's age, education, work experience, and RFC and determined that, because Plaintiff could work as a housekeeper cleaner, photocopying operator, and marker, Plaintiff was not disabled. *Id.* at 27–28. The Appeals Council denied Plaintiff's request for review on July 5, 2022, at which point the ALJ's decision became final. *Id.* at 1–5.

## **LEGAL STANDARD**

This Court has jurisdiction to review final decisions of the Commissioner. 42 U.S.C. § 405(g). The Court must affirm the Commissioner's decision if it is based on substantial evidence in the record as a whole and the correct application of the relevant legal standards. *Butler*, 353 F.3d at 999. Substantial evidence is more than a mere scintilla but less than a preponderance of the evidence. *Id.* This requires only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Katrina M. v. O'Malley*, 752 F. Supp. 3d 1, 9 (D.D.C. 2024) (citing *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019)); *see also La. Pub. Serv. Comm'n v. Fed. Energy Regul. Comm'n*, 20 F.4th 1, 7 (D.C. Cir. 2021). Moreover, the Court must give deference to the ALJ as the factfinder. *Rossello ex rel. Rossello v. Astrue*, 529 F.3d 1181, 1185 (D.C. Cir. 2008).

Despite the deference a reviewing court must give to the ALJ, the standard of review "calls for careful scrutiny of the entire record" to determine whether the ALJ "has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits." *Simms v. Sullivan*, 877 F.2d 1047, 1050 (D.C. Cir. 1989) (citation modified). The ALJ's decision must include findings and conclusions on all material issues of fact, law, or discretion as well as the ALJ's reasons for those findings and conclusions. 5 U.S.C. § 557(c)(3)(A). In reaching a decision, an ALJ cannot simply disregard evidence that does not support the ALJ's conclusions. *Hartline v. Astrue*, 605 F. Supp. 2d 194, 203 (D.D.C. 2009).

Plaintiff carries the burden to show that the ALJ's decision was not based on substantial evidence or that the ALJ applied an incorrect legal standard. *Settles v. Colvin*, 121 F. Supp. 3d 163, 169 (D.D.C. 2015); *see also Lane-Rauth v. Barnhart*, 437 F. Supp. 2d 63, 64 (D.D.C. 2006). Only a prejudicial error "that affected the outcome of the proceeding" warrants reversal. *Wilson v. Comm'r of Soc. Sec.*, No. 24-5073, 2025 WL 2047967, at \*3 (D.C. Cir. July 22, 2025) (citing *Saunders v. Kijakazi*, 6 F.4th 1, 4 (D.C. Cir. 2021)).

## DISCUSSION

Plaintiff contends the ALJ committed four errors in formulating Plaintiff's RFC: (1) the ALJ improperly evaluated Plaintiff's migraines; (2) the ALJ improperly relied on the medical source opinion of Dr. Choudhury; (3) the ALJ failed to account for Plaintiff's limitations in CPP; and (4) the ALJ improperly relied on medical evidence to discount Plaintiff's subjective symptoms. ECF No. 11 at 3–19. The Commissioner contests each claim. ECF No. 12. Plaintiff's third argument is dispositive.

### I.    Functional Analysis

At step four, the ALJ assesses the claimant's RFC, which bears on whether Plaintiff can perform previous work (step four) or other jobs (step five). *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f). The RFC determination requires a "function-by-function" inquiry based on all the relevant evidence of a claimant's ability to work. SSR 96-8p, 1996 WL 374184, at \*3. This inquiry includes an assessment of a plaintiff's exertional and nonexertional capacities. *See id.* at \*5–6. In formulating the RFC and assessing the claimant's capacities, the ALJ must consider all of claimant's severe and non-severe impairments. *Id.* at \*5. If the claimant has at least one severe impairment or combination of impairments, the ALJ must consider how the impairments impact the claimant's physical and mental capacities in the workplace. *See Cheryl S. v. Kijakazi*, No. 18-cv-1379, 2022 WL 21758804, at \*10–11 (D.D.C.

12

May 4, 2022); *report and recommendation adopted*, 2022 WL 21758803 (D.D.C. May 20, 2022); *see also* 20 C.F.R. §§ 404.1545(a)(1)–(2), 416.945(a)(1)–(2).

The function-by-function analysis requires the ALJ to provide a narrative discussion that identifies the evidence that supports each of the ALJ's conclusions.  *Butler*, 353 F.3d at 1000; *see also* SSR 96-8p, 1996 WL 374184, at *7.  Courts in this District have used various approaches to evaluate this requirement.  *See Contreras v. Comm'r of Soc. Sec.*, 239 F. Supp. 3d 203, 207 (D.D.C. 2017) (comparing cases); *Charles v. Astrue*, 854 F. Supp. 2d 22, 29–30 (D.D.C. 2012) (same). Although courts are split on whether an ALJ must evaluate and articulate their conclusions in writing,[7] the ALJ must still provide a "thorough narrative discussion of Plaintiff's limitations" and build a "logical bridge" between relevant evidence and the ALJ's conclusions.  *Contreras*, 239 F. Supp. 3d at 207; *see also Butler*, 353 F.3d at 1000; *Lane-Rauth*, 437 F. Supp. 2d at 67.  Relevant evidence includes medical records, source opinions, and individual's subjective complaints about their condition.  *See* 20 C.F.R. §§ 404.1529(c)(1)–(3), 416.929(c)(1)–(3).

Ultimately, an ALJ must provide a sufficient basis for the Court to understand the ALJ's reasoning when viewing the decision as a whole.  *Colter v. Kijakazi*, No. 20-cv-0632, 2022 WL 715218, at *11 (D.D.C. Mar. 10, 2022); *see also Said S. v. O'Malley*, No. 22-cv-362, 2024 WL 2152737, at *10 (D.D.C. May 14, 2024).  The ALJ cannot "cherry-pick facts" to support their finding of non-disability while ignoring evidence that reflects otherwise.  *Said S.*, 2024 WL 2152737, at *10.  And an ALJ must at least discuss the evidence that contradicts the Commissioner's position.  *See Lane-Rauth*, 437 F. Supp. 2d at 67 (citing *Godbey v. Apfel*, 238 F.3d 803, 808 (7th Cir. 2000)).  If the ALJ meets this standard, the Court must sustain the ALJ's

---

[7]    *Compare Lane-Rauth*, 437 F. Supp. 2d at 67 (requiring this analysis for a plaintiff's exertional capacity), *with Kim M. v. Kijakazi*, No. 20-cv-2072, 2021 WL 4033060, at *7 (D.D.C. Sept. 3, 2021) (collecting cases and finding such an analysis is unnecessary).

findings even if the Court's independent analysis of the evidence may differ.  *Ali v. Colvin*, 236 F. Supp. 3d 86, 90 (D.D.C. 2017).  Courts will consider only the grounds upon which the ALJ relies and will not consider any post hoc rationale that the Commissioner offers on appeal.  *See, e.g.*, *Ward v. Berryhill*, 246 F. Supp. 3d 202, 210 (D.D.C. 2017).

II.     **The ALJ Did Not Properly Assess Plaintiff's CPP Limitations in the RFC and in the Hypothetical Questions Posed to the Vocational Expert.**

Plaintiff claims that the ALJ failed to properly address Plaintiff's CPP limitations in the formulation of the RFC or in the ALJ's hypothetical questions to the vocational expert.  ECF Nos. 11 at 14–18; 14 at 5–10.  Specifically, Plaintiff argues that while the ALJ "specifically determined that the Plaintiff was limited to simple routine tasks but not at a production rate pace, he failed to include any limitation in his [RFC] assessment which specifically addressed concentration or persistence, and, perhaps most importantly, failed to explain how any of these limitations were adequately addressed by a limitation to the performance of jobs with simple routine tasks but not at a production rate pace."  ECF No. 11 at 14.  The Commissioner argues that remand is not warranted because the ALJ did account for Plaintiff's CPP limitations in the RFC.  ECF No. 12 at 30–32.

There is no dispute that the ALJ concluded, based on the record, that Plaintiff had a moderate limitation in CPP.  AR at 19 ("With regard to concentrating, persisting or maintaining pace, the claimant has a moderate limitation.").  "Moderate limitations in CPP affect a plaintiff's ability to sustain focused attention and concentration long enough to complete tasks in common work settings on a timely basis."  *Antonio W. v. Kijakazi*, No. 20-cv-1920, 2023 WL 3790700, at *9 (D.D.C. June 2, 2023) (citing *Johnson v. Saul*, No. 19-cv-3829, 2021 WL 411202, at *6 (D.D.C. Feb. 5, 2021)).  As one judge in this District has noted, "many ALJs attempt to account in the RFC for a 'moderate' CPP limitation by restricting the claimant to simple, routine, and/or repetitive

14

work (or some derivation of those limitations)." *Shea M. v. Kijakazi*, No. 21-cv-2204, 2023 WL 3040602, at *18 (D.D.C. Apr. 21, 2023). A limitation to simple, routine, and repetitive tasks, however, is "insufficient to address a moderate CPP limitation because 'the ability to perform simple tasks differs from the ability to stay on task.'" *Id.* at *19 (quoting *Petty v. Colvin*, 204 F. Supp. 3d 196, 206 (D.D.C. 2016) and *Mascio v. Colvin*, 780 F.3d 632, 638 (4th Cir. 2015)). Because of this, such a limitation, without more, does not actually address the claimant's mental impairment. *Id.* at *18.[8]

Moreover, when posing hypothetical questions to a vocational expert, the ALJ must accurately describe the claimant's impairments so that the expert can assess whether jobs in the national economy exist for the claimant. *See Butler*, 353 F.3d at 1005; *Petty*, 204 F. Supp. 3d at 205. An ALJ's failure to accurately describe a claimant's impairments can be reversible error. *Petty*, 204 F. Supp. 3d at 205 (citing *Butler*, 353 F.3d at 1006).

Here, although the ALJ concluded that Plaintiff had moderate limitations in CPP, the ALJ failed to adequately factor those limitations into the RFC or the questions to the vocational expert. Indeed, the ALJ failed to place specific restrictions on Plaintiff's ability to stay on task when crafting the RFC, even though the vocational expert testified that a claimant with Plaintiff's RFC could only be off task 10 to 15% of the time. AR at 379; *see Simmons v. Saul*, No. 18-cv-1293, 2019 WL 12251882, at *18 (D.D.C. Sept. 30, 2019) (noting the significance of a similar limitation), *report and recommendation adopted*, No. 18-cv-1293, 2019 WL 12251883 (D.D.C.

---

[8]    Many courts in this District have held that an ALJ does not properly account for a claimant's CPP limitations by only applying this restriction. *See Petty*, 204 F. Supp. 3d at 206 n.3 (collecting circuit cases); *see also William R. v. King,* No. 23-cv-319, 2025 WL 399974, at *3 (D.D.C. Feb. 5, 2025); *Lisa H. v. Kijakazi*, No. 20-cv-03322, 2023 WL 7156518, at *8–9 (D.D.C. Oct. 31, 2023); *Bullock v. Kijakazi*, No. 20-cv-1764, 2023 WL 5023380, at *8 (D.D.C. Aug. 8, 2023); *Antonio W.*, 2023 WL 3790700, at *9; *Shea M.*, 2023 WL 3040602, at *19; *Johnson*, 2021 WL 411202, at *6; *Nsiah v. Saul*, No. 19-cv-42, 2021 WL 372784, at *1 (D.D.C. Feb. 3, 2021).

Oct. 22, 2019).  For the reasons stated above, the ALJ's mere reference to an RFC limiting Plaintiff to "simple, routine tasks" does not properly account for his CPP limitations.  Nor is the ALJ's production rate restriction on its own sufficient to explain how the RFC accounts for the Plaintiff's limitation.  *See Johnson*, 2021 WL 411202, at *6 ("not having to meet production goals or quotas does not explain how long plaintiff can stay on task in a given eight-hour day for five days a week (or an equivalent work schedule)").  Similarly, limiting changes in the workplace or interactions with others does not affect whether the Plaintiff can perform these tasks with moderate CPP limitations.  *See Antonio W.*, 2023 WL 3790700, at *9 (reaching the same conclusion).  Therefore, the ALJ erred by failing to include specific limitations adequate to account for Plaintiff's mental impairments in the RFC and hypothetical questions to the vocational expert.

The discussion, however, does not end there.  It is not the case that this error warrants remand in all cases.  *Shea M.*, 2023 WL 3040602, at *18.  Rather, an ALJ may be found to have adequately accounted for the claimant's moderate CPP limitation either: "(1) by including additional limitations in the RFC relevant to the CPP domain beyond an unadorned simple, routine, and repetitive tasks (or its equivalent) restriction, or (2) by adequately explaining why . . . [the claimant's] overall limitations do not affect his capacity to sustain simple, routine, or unskilled work."  *Id.* (citation modified).  Because the ALJ failed to include additional limitations in the RFC beyond the general restriction, the decision could still be affirmed, in other words, if the ALJ separately explains the basis for concluding that the RFC did not require additional concentration-based limitations.  *William R.,* 2025 WL 399974, at *3 (quoting *Shea M.*, 2023 WL 3040602, at *20)).

The Commissioner makes a half-hearted attempt to defend the ALJ, claiming that the ALJ did take Plaintiff's CPP limitations into account.  For example, the Commissioner argues that the

16

"ALJ specifically restricted Plaintiff to simple, routine tasks . . . *to account for Plaintiff's moderate limitations in concentration, persistence, or pace*." ECF No. 12 at 30 (citing AR at 21) (emphasis added). The Commissioner also argues that the ALJ's "hypothetical to the VE limited Plaintiff to unskilled work *to account for limitations in concentration, persistence, or pace*." ECF No. 12 at 31 (citing AR at 377–78) (emphasis added). None of the Commissioner's record cites, however, reflect such an explicit statement from the ALJ. In any event, the Commissioner misses the mark because he fails to point to any *specific* explanation from the ALJ regarding how and why the RFC is appropriately tailored to the Plaintiff's CPP limitations. Moreover, beyond general propositions, the Commissioner points to no authority to support his position that the ALJ in this case properly accounted for Plaintiff's limitations. Nor does the Commissioner attempt to distinguish the significant authority upon which Plaintiff relies. *See* ECF Nos. 11 at 14–17; 12 at 30–33.

The Court acknowledges that the ALJ in this case does go a bit further than other ALJs in attempting to tie the RFC to the Plaintiff's CPP limitations. AR at 24 (noting that the limitation to "simple, routine tasks, but not at a production rate pace" corresponds to the Plaintiff's moderate limitations in CPP). Nonetheless, the ALJ's statement is conclusory in the sense that it fails to explain, for example, why the RFC did not require additional concentration-based limitations or why the Plaintiff's limitations do not affect his capacity to carry out the simple, routine tasks accounted for in the RFC.

As the ALJ's decision stands, the Court cannot discern an adequate explanation as to how the RFC was specifically tailored to Plaintiff's limitations with respect to CPP. Accordingly, Plaintiff is entitled to a new administrative hearing. Because the Court recommends remand on this ground, the Court need not address Plaintiff's remaining arguments. *See Saunders*, 6 F.4th at 5. The ALJ is free to (and should if they deem it necessary) consider Plaintiff's other arguments

17

in the context of a new hearing on remand. *See Peyton v. Saul*, No. 17-cv-1803, 2020 WL 9439365, at *4 n.5 (D.D.C. Mar. 2, 2020).

Date: May 22, 2026

_____
MOXILA A. UPADHYAYA
UNITED STATES MAGISTRATE JUDGE

**Local Civil Rule 72.3(b) Notice**

The Parties are advised that under the provisions of Local Rule 72.3(b), any Party who objects to a Report and Recommendation must file a written objection with the Clerk of Court within fourteen days of the party's receipt of the Report and Recommendation. The written objections must specifically identify the portion of the report or recommendation to which objection is made and the basis for such objections. Failure to file timely objections to the findings and recommendations set forth in this Report may waive that party's right of appeal from an order of the District Court that adopts such findings and recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985).

\* \* \*